Dear Senator Michot:
You have requested the opinion of this office on several issues related to potential contracts by political subdivisions with companies offering electrical and mechanical systems maintenance services. After discussions with the interested parties, it appears that the significant issues which require a response are:
 1. A private contractor has offered for a fixed annual fee to undertake all maintenance of electrical and mechanical systems of a political subdivision in designated buildings. This maintenance would include periodic inspection and maintenance duties, responses to failures within a designated response time, and, if necessary, replacement of components of the electrical and mechanical systems, regardless of the cost. The total cost of the maintenance contract would be less than the public entity now spends for similar services and for replacement parts and equipment. Would such a contract need to be advertised and bid pursuant to the Public Bid Law?
 2. If the Public Bid Law is found to apply to the above described maintenance contract, could the provisions of R.S. 33:4547.1 dealing with performance-based energy efficiency contracts be applied to the proposed contract? The cost of energy savings attributable to the contract are specifically stated in R.S. 33:4547.3 to include maintenance savings. Would the maintenance savings by a labor maintenance services contract as described above suffice as the necessary annual energy cost savings contemplated in R.S. 33:4547.1?
 3. R.S. 33:4547.1 requires that a performance-based energy efficiency contract be "for energy efficiency services and equipment" and that "the payment obligation for each year of the contract is either: (1) Set as a percentage of the annual energy cost savings attributable to the services or equipment under the contract; or (2) Guaranteed by the person under contract to be less than the annual energy cost savings attributable to the services or equipment under the contract." Must the savings required by the above provision be substantial or may the savings simply be a nominal percentage or amount?
Louisiana's Public Bid Law, R.S. 38:2211-2296, is applicable to political subdivisions. This statute covers public works [R.S.38:2212] and contracts for purchases of materials or supplies [R.S. 38:2212.1]. When asked to consider the applicability of these provisions to public contracts for services, our courts have consistently held that these provisions do not require public bidding for such contracts. Wallace Stevens, Inc. v. LafourcheHospital, 323 So.2d 794 (La. 1975); BFI v. Monroe, 465 So.2d 882
(La.App. 2d Cir., 1985); and Lafourche Parish Water v. Carl Heck,346 So.2d 769 (La.App. 1st Cir., 1977). In the 25 years since this interpretation was first expounded by our courts, the legislature has not seen fit to amend the Public Bid Law to require bidding for services. Based on this statutory language and the jurisprudence, we would conclude that contracts for maintenance services for the electrical and/or mechanical systems of a political subdivision need not be bid. The result may be different if such contracts were with state entities since Louisiana state entities are subject to the Louisiana Procurement Code which is explicitly applicable to contracts for services. La. R.S. 39:1554B.
The issue raised by the specific maintenance agreement which you inquire about is complicated by the inclusion in the obligation of the maintenance contractor the purchase and installation of all required replacement parts, regardless of the cost of such parts. Under the provisions of R.S. 38:2212.1 the purchase of "materials and supplies", such as parts, would have to be publicly bid if the cost of the part or parts required for a particular repair exceed $15,000. I understand that it is not uncommon for replacement parts for heavy equipment, large electrical and HVAC systems to exceed this bidding threshold. The difficulty is that the identity and cost of parts which will be required for many repairs and maintenance functions cannot be known until the repair work has been undertaken and a preliminary evaluation of the problem is made. Typically, the equipment involved has been taken out of service in order to make such a determination. Two previous opinions of this office (Opinion Numbers 97-490 and 85-904) have held that at this point, the parts must be publicly bid if their cost exceeds the bidding threshold. Such a bid process would take a minimum of twenty days. This obviously is not a workable solution for several obvious practical reasons. We do not believe that the law intended such an absurd and unworkable result.
In the proposed comprehensive maintenance contract the entire responsibility for services and all replacement parts would be on the contractor, including all risk associated with the cost of such parts. The cost of those parts is only one component of the contractor's total obligation, most of which deals with inspections and routine maintenance, response to equipment and systems failures, and analysis of equipment problems. There is an inescapable merger of services and equipment, a circumstance which is not directly addressed in the Public Bid Law. The public entity will not be paying directly for any identifiable part, regardless of the cost, but only for the security of having the contractor assume all liability for parts as well as maintenance. In response to the first issue, we conclude that since it appears that the predominant cost for such a contract would be for the ongoing services and for the risk of the cost of replacement equipment, it is fair to characterize such a contract as one for services which need not be bid. To the extent that Opinion Numbers 97-490 and 85-904 are in conflict with this conclusion, they are recalled.
You also ask if the provisions of R.S. 33:4547.1-4547.3 would authorize the comprehensive maintenance contract discussed above. Yes. Indeed, it appears that the proposed contract better fits the provisions for Performance-Based Energy Efficiency Contracts than those of the Public Bid Law.
R.S. 33:4547.1 provides:
 A. Any political subdivision may enter into a performance-based energy efficiency contract for services and equipment. Such a contract shall be considered a contract for services and shall be exempt from the provisions of R.S. 38:2212 but shall be subject to the provisions of this Chapter.
 B. For the purposes of this Chapter, a performance-based energy efficiency contract shall be defined as a contract for energy efficiency services and equipment in which the payment obligation for each year of the contract is either:
 (1) Set as a percentage of the annual energy cost savings attributable to the services or equipment under the contract; or (2) Guaranteed by the person under contract to be less than the annual energy cost savings attributable to the services or equipment under the contract.
The provisions of R.S. 33:4547.2 require that such performance-based energy efficiency contracts be entered pursuant to a defined request for proposals process. R.S. 33:4547.3
addresses the term of such contracts and makes clear that "maintenance savings" must be included in any calculation of annual energy cost savings attributable to the services or equipment provided under the contract. "Maintenance savings" are defined as "operation expenses eliminated and future capital replacement expenditures avoided as a result of new equipment installed or services performed by the performance contractor."
Since this statute contemplates and authorizes a single contract which covers both services and replacement parts and equipment, and since it provides for the flexibility of using Requests For Proposals in seeking a contractor, it seems best suited for the proposed activities. We do not feel that maintenance savings alone would support such a contract. R.S. 33:4547.3A says that all such contracts "shall contain a guarantee of energy savings." This is taken to mean that the gross amount of energy consumed will be reduced as a result of the performance of the contract. Paragraph B then provides that "maintenance savings shall be included" in calculating annual energy cost savings. Taken together, these provisions require that maintenance savings and energy savings be factored into the contract in calculating the fee due pursuant to R.S. 33:4547.1B. This provision would simply require that the contract result in a reduction of the total of expenses for all elements related to energy efficiency when comparing those costs before the contract and then under the contract. The result shall be a gross savings in energy related expenses, from which contract fees are to be paid.
The third issue deals with the significance of savings which are required to justify a performance-based energy efficiency contract as contemplated by R.S. 33:4547.1. The statute specifies no amount or percentage which is required, only that the cost of the contract be less than the energy cost savings generated by the contract. However, as a matter of public policy it would seem unwise for a political subdivision to undertake such a major shift and transformation without the guarantee of significant savings. Also, it appears likely that there will be certain issues which will call for subjective evaluation to determine the extent of savings. A minimal or nominal savings requirement may well lead to uncertainty about the existence of any savings at all when such subjective cirteria are in use. We would conclude that the statute requires no fixed level of savings, but that a prudent public body would require a performance-based energy efficiency contract which guarantees significant savings.
I trust that this answers your questions. Please let me know if we maybe of any further assistance to you in this matter.
Sincerely,
 RICHARD P. IEYOUB
Attorney General
 By: GLENN R. DUCOTE
Assistant Attorney General Chief, Public Finance Contracts Section
RPI:GRD:jv
Honorable Mike Michot Louisiana State Senator District 43 312 W. Pinhook Road Lafayette, LA 70508
DATE RECEIVED: 8/24/99 DATE RELEASED: March 9, 2000
GLENN R. DUCOTE, ASSISTANT ATTORNEY GENERAL